**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**DENNIS R. BAKER,**

      **Petitioner,**

**vs.**                              **Case No. 4:10cv115-MP/CAS**

**KENNETH S. TUCKER, as
Secretary of the Florida
Department of Corrections,**

      **Respondent.[1]**

_____/


## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Pending is an amended petition for writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 by Petitioner Dennis R. Baker, proceeding pro se.  Doc. 6.  Respondent

filed an answer and attached portions of the state court record as exhibits.  Doc. 12.

Petitioner has filed a reply.  Doc. 21.

The matter was referred to the undersigned magistrate judge for report and

recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local

Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has

---

[1]Kenneth S. Tucker succeeded Edwin G. Buss and Walter McNeil as Secretary of the Department of Corrections and is automatically substituted as the Respondent.  *See* Fed. R. Civ. P. 25(d).

determined that no evidentiary or emergency hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied on the merits.

## **Procedural History**

By information filed on May 12, 1988, in Leon County Circuit Court case number 1987-CF-5015-A1, the State of Florida charged Petitioner with capital sexual battery. Doc. 12 Ex. B at 1. At some point thereafter, in early 1989, Petitioner left the jurisdiction; he was apprehended by the fugitive task force in Shoshone, Idaho, in late 2003. *See id.* at 22, Ex. C.

Petitioner proceeded to trial on September 1, 2004. Doc. 12 Ex. D (trial transcript). The victim, A.W.R., testified at the trial. *Id.* at 51-93, 107-08. Petitioner also testified. *Id.* at 109-44. The jury returned a verdict of guilty as charged. Doc. 12 Ex. B at 40 (verdict); Ex. D at 177-78. The court adjudicated him guilty and sentenced him to life in prison. Doc. 12 Ex. D at 182.

Petitioner appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D05-1780. Doc. 12 Ex. B at 97. Petitioner's appellate counsel filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). *Id.* Ex. F. Petitioner filed his own brief. *Id.* Ex. H. On April 24, 2006, the First DCA issued a per curiam affirmance without a written opinion. *Id.* Ex. I; <u>Baker v. State</u>, 928 So. 2d 338 (Fla. 1st DCA 2006) (table).

On November 8, 2006, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state circuit court. Doc. 12 Ex. J at 1-20. Following an evidentiary hearing, during which Petitioner was represented by counsel, the state post-conviction court denied the Rule 3.850 motion. *Id.* at 38; Doc. 12 Ex. K. Petitioner appealed, pro se, to the First DCA and filed a brief, in case number 1D08-3737. *See* online docket for 1D08-3737 at www.1dca.org. The State filed an answer brief and Petitioner filed a reply. *See id.* The First DCA per curiam affirmed the case without an opinion on August 4, 2009. Doc. 12 Ex. Q; Baker v. State, 13 So. 3d 1005 (Fla. 1st DCA 2009) (table). The mandate issued on September 1, 2009. Doc. 12 Ex. R; online docket for 1D08-3737 at www.1dca.org.

On March 22, 2010, Petitioner filed his § 2254 petition in this Court. Doc. 1. As referenced above, Petitioner later filed an amended § 2254 petition. Doc. 6. Respondent has filed an answer, Doc. 12, and Petitioner has filed a reply, Doc. 21.

## Analysis

In his amended § 2254 petition, Petitioner raises two grounds. As explained in detail below, neither ground warrants federal habeas corpus relief.

### Ground 1: Ineffective Assistance of Counsel

In Ground 1, Petitioner claims ineffective assistance of counsel (IAC), in violation of his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, because his assistant public defender failed to advise him that if he rejected the State's plea offer, of seven years in prison in exchange for a guilty plea to a reduced charge, he would be subject to a life sentence with a 25-year minimum mandatory prison term

before parole eligibility. Doc. 6 at 4-4a. Petitioner asserts that, if he had known at the time of the plea offer that he was facing life with a 25-year minimum, he would have accepted the offer. *Id.* at 4a. Petitioner asserts he "only learned of the true consequence of the charged offense moments prior to sentencing" and, until that point, he did not know about the 25-year minimum mandatory term. *Id.* Petitioner asserts the record establishes that his attorney "was, in fact, unaware of the applicability of the 25-year minimum mandatory sentence until after the brief sentencing recess, at which time sentencing proceeded." *Id.* at 4b. Petitioner indicates the state post-conviction court denied his claim and that ruling was affirmed on appeal. *Id.* Petitioner asserts he is entitled to habeas corpus relief under § 2254. *Id.* at 4b-4c. Without a specific explanation, Petitioner asserts that "[a]lthough the state court did identify the correct governing legal principles from the Supreme Court's decisions, it unreasonably applied the principle to the facts of Petitioner's case." *Id.* at 4c.

As Respondent explains in its answer, Petitioner raised an IAC claim in his Rule 3.850 motion filed in the state post-conviction trial court. *See* Doc. 12 at 8-9; Doc. 12 Ex. J at 3. This IAC claim included an allegation, such as the one raised here, that defense counsel was ineffective for failing to advise Petitioner that, if he rejected the plea offer, he could receive a life sentence with a 25-year minimum before parole eligibility. *See* Doc. 12 Ex. J at 5. Following an evidentiary hearing, the state post-conviction trial court denied this claim in a written order citing reasons stated on the record at the hearing. *Id.* at 38. In particular, the post-conviction trial court specified those reasons:

I'm going to find that Mr. Holton did provide effective counsel and that first prong of Strickland was not met.

And I agree that the defendant today has contradicted allegations in his motion. He physically said that he rejected the early offer because the State was unable to locate the victim. There was no offer given after that and he stated that he knew that the offense was punishable by life.

Additionally, on August 31st of 2004 -- which was the day in between jury selection which was August 30th -- and then when the trial was held on September 1st, there was a motion related to whether the State would be allowed to introduce testimony related to the fact that the defendant absented himself from the jurisdiction of the Court for 17 years.

And I'm going to quote a couple of passages from that transcript. On Page 16, Ms. Ray, questioning the defendant:

And she says, carrying with it, if you were convicted a mandatory sentence of life in prison. Isn't that correct? And the defendant answered, yes. Ms. Ray was questioning him about that he left the jurisdiction and knew -- well, let me back up one.

On Page 15, starting on line 23, she says, Mr. Baker, when you left the jurisdiction in 1989, you were aware that you were charged with capital sexual battery. Is that correct, sir? He says, yes.

And then she asked him the follow-up question. Carrying with it, if you were convicted, a mandatory sentence of life in prison. Isn't that correct? Yes.

And then they go on to discuss the different Public Defenders that he had back in '88, before he fled the jurisdiction.

Then on page 39 of that same transcript, Ms. Ray is making an argument, starting on line 15. She says, but any reasonable person charged with capital sexual battery when they are facing life in prison would not leave this jurisdiction for 17 years. It goes on to argue why she thinks that testimony should be admissible. So he heard it; I think he heard it from his lawyer, too. But he heard it in addition, the day before trial from Ms. Ray.

Then two other things in that transcript. When Judge Harley --
Judge Shelfer did the jury selection in the case; Judge Harley heard this
motion and then presided over the trial.

It says on Page 50, starting at Line 23, and this is not that he didn't
come back to pay a traffic fine. This is one of the most serious felony
charges that a person can face. That's about all he says about that, there.

And then one more time toward the end of the transcript, in the
middle of Page 55, he asked. Judge Harley goes out of his way to ask the
defendant whether he has any questions about the proceedings and
whether he has any questions of the Judge at that time. And the
defendant says no, sir, twice.

So I think based on what the defendant is saying today and what
Mr. Holton says today, it's clear that he knew it was punishable by life.
And the confusion at sentencing was not related to a mandatory minimum.
It was whether he was going to get life period, or life with the possibility of
parole after 25 years.

So based on all that, I'm going to deny your motion.

Doc. 12 Ex. K at 28-31. Thereafter, the trial court entered a written order denying

Petitioner's motion for post-conviction relief citing the reasons stated on the hearing

record. *Id.* Ex. J at 38. Petitioner appealed this order to the First DCA and filed a pro se

brief. *See* Doc. 12 Ex. N. In the appellate brief, Petitioner raised two points: (1)

"WHETHER THE LOWER COURT'S ORDER OF DENIAL IS IN COMPLIANCE WITH

RULE 3.850, IN THE ABSENCE OF THE REQUISITE FINDINGS OF FACT AND

CONCLUSIONS OF LAW" and (2) "WHETHER THE LOWER COURT ERRED IN

DENYING BAKER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS UNDER

THE FACTS AND CIRCUMSTANCES OF THE CASE." *Id.* at i. The only federal

authority Petitioner cited was Strickland v. Washington, 466 U.S. 668 (1984). *See* Doc.

12 Ex. N at ii.  The First DCA per curiam affirmed the appeal without an opinion.  *See*

Doc. 12 Ex. Q; <u>Baker v. State</u>, 13 So. 3d 1005 (Fla. 1st DCA 2009) (table).

Because Petitioner contends he was denied his constitutionally guaranteed right

to the effective assistance of counsel, his claim is governed by the holding in <u>Strickland</u>,

as the post-conviction trial court indicated.  *See* Doc. 6; Doc. 12 Ex. K at 28.  In

<u>Strickland</u>, the U.S. Supreme Court adopted a two-part test for claims of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that

counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.

To demonstrate prejudice, a defendant "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  *Id.*

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

<u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct. at 1388.  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Id.  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  Id.

Here, the state post-conviction trial court applied the Strickland test and denied Petitioner's claim on the merits, and that order was affirmed on appeal.  Thus, that determination is entitled to deference and review is limited to the record before the state court.  See Cullen, 131 S.Ct. at 1388.

The state court found the first prong of Strickland was not met, and the record supports this determination.  In addition to the portions of the transcript quoted above,

Petitioner's testimony at the state post-conviction evidentiary hearing, during which he

was represented by counsel, as well as the testimony of defense trial counsel indicates

Petitioner knew he was charged with a capital crime and a life sentence could be

imposed if he was convicted.   Specifically, Petitioner testified:

> I was told all along -- even back when I first talked I was told that I was
> facing a life sentence, or could be. That's all I was told, that there was a
> life sentence and that it was also discretionary.
>
> So Mr. Holton -- my lawyer back then was, if I am not mistaken, that
> was Merle I believe it was. I'm not positive; it was one of them. He was the
> State Attorney or my lawyer. I can't remember which one it was right now,
> but I had it wrote down.  But he had mentioned it was a life sentence, that
> it carried a life sentence.

Doc. 12 Ex. K at 21.  Petitioner further testified, in response to questions by his post-

conviction counsel:

> Q Mr. Baker, what did you think a life sentence would be when you recall
> you're facing life; did you think that was natural life, or what?
>
> A No, not natural life.  When you say life, nobody mentioned, natural life.
>
> Q What did you think it meant?
>
> A The maximum sentence that I could receive could be up to life.  But it
> was discretionary; I could get a lesser sentence or the maximum
> sentence.  That's what I believed.
>
> Q Did anybody tell you -- did Mr. Holton tell you that, that it's discretionary
> by the Court --
>
> A No, (inaudible).

*Id.* at 22.  Petitioner's trial counsel testified that he told Petitioner the possible penalty:

> I am sure that I discussed with him what penalties he faced. Now, a
> capital sexual battery prior to, I think we are talking maybe like early 90s.
> Prior to that time, you know our Supreme Court, U.S. Supreme Court had

some years ago said it was unconstitutional to put people to death for this crime. And so the only other alternative was life imprisonment, which means natural life.

Certainly, whenever the guidelines came in in 1984 they eliminated parole. And there was subsequent legislative action talking about, you know, a life sentence, menial life sentence and you couldn't be released for any reason. So there would have been one of two scenarios that would have applied to his case.

The worst case scenario would be life is life and you never get out. The other scenario would be if he was able to go under the prior law, which said that a life sentence you were eligible for parole after 25 years.

*Id.* at 11.  Petitioner's trial counsel further testified in response to questioning from

Petitioner's post-conviction counsel regarding the 25-year minimum before parole

eligibility:

Q  There seemed to have been some confusion between you and Ms. Ray whether or not there was a 25-year minimum mandatory -- well, parole requirement.  That's what I gleaned from the paperwork or the transcript.

I mean, was he ever told that there was a 25 minimum on there to serve before he could come to the parole board?

A  I don't know exactly what the discussions were.  But again, there was only two possibilities.  And the best of the two possibilities would have been 25 years, before he was ever even eligible.  The other one would be he would never be eligible for release prior to expiration of the sentence.

I don't -- I see no way that I would not have discussed that with him.

*Id.* at 11-12.

Further, Petitioner's testimony, as well as that of trial counsel, supports the post-

conviction trial court's finding that Petitioner rejected the plea offer because, at that

point in time, the victim had not been located.  Specifically, Petitioner testified:

[An investigator] told me there was a deal.  He told me that – to get me a

Public Defender in the case and there was a deal floating around for seven years. And, I asked him what that was about; he said, because they don't have a victim. . . . And when I finally got Mr. Holton . . . he mentioned the deal to me. But at that time we didn't have a victim, so I said, well, let's get on with it. I didn't want to take the deal at that time, because we didn't have a victim.

*Id.* at 18. Likewise, Petitioner's trial counsel testified:

Q Now, how long -- was there a plea offer placed on the table before either you or Mr. Baker -- before this victim was found?

A Yes, Mr. Flury told me that -- in discussing the difficulties he was having in locating her he made a plea offer of eight years, before she was located. And, I conveyed that to Mr. Baker and he rejected that offer because at that time I believe he was hoping that they would not locate her.

*Id.* at 7.

Finally, as referenced by the post-conviction trial court, and as pointed out by Respondent, the transcript of the hearing on the motion in limine, held on August 31, 2004, further indicates Petitioner knew the penalty that would be imposed if he was convicted of the charged crime. Doc. 12 Ex. C. At issue during that hearing was whether the State could refer to Petitioner's absence from the court's jurisdiction from 1989 until his apprehension shortly before trial. *Id.* In response to questions by the prosecutor, Petitioner testified:

Q Mr. Baker, when you left the jurisdiction in 1989, you were aware that you were charged with a capital sexual battery, is that correct, sir?

A Yes.

Q Carrying with it, if you were convicted, a mandatory sentence of life in prison, isn't that correct?

A Yes.

*Id.* at 15-16.

Given this record, therefore, it was not unreasonable for the state court to conclude that Petitioner's trial counsel's performance was not deficient. Petitioner has failed to establish the post-conviction trial court's decision denying his IAC claim was an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the record before the state court. Under the double deferential review this Court applies to a Strickland claim evaluated pursuant to the § 2254(d) standard, Petitioner's ineffective assistance of counsel claim in Ground 1 fails. Accordingly, Ground 1 should be denied.

Ground 2: Denial of Right to Fair Trial & Insufficient Evidence

In Ground 2, Petitioner asserts he was denied a fair trial, in violation of his rights under the Sixth and Fourteenth Amendments of the U.S. Constitution. Doc. 6 at 4. Petitioner explains that defense counsel moved for a directed verdict of acquittal after the State's presentation of its case, based on the State's failure to present evidence of penetration as charged. *Id.* The trial judge acknowledged that element was lacking and commented that he was inclined to grant a directed verdict. *Id.* The court allowed the State to reopen its case to present evidence of penetration and recalled the victim. *Id.* at 4c. Defense counsel renewed the motion for judgment of acquittal. *Id.* After the trial ended, defense counsel moved for a new trial, asserting the jury's verdict was contrary to the weight of the evidence. *Id.* After a hearing was held on this motion, the court denied it. *Id.* Petitioner further states that, in the body of his brief filed on direct appeal, he argued "his constitutional rights to a fair trial, as guaranteed under the 6th and 14th

amendments of the United States Constitution, were violated because there was

insufficient evidence to support a jury verdict of guilt beyond a reasonable doubt." *Id.*

Petitioner asserts there is no physical evidence supporting the alleged charges of

capital sexual battery. *Id.* Petitioner asserts the sole evidence presented was that of

the alleged victim, A.W.R., and her testimony was impeached in material respects and

not sufficient by itself to sustain a finding of guilt beyond a reasonable doubt. *Id.* at 4c-

4d. In particular, Petitioner states:

> [A.W.R.]'s testimony at trial was impeached by (1) her admission she had
> been untruthful as to matters she reported when the charge was originally
> filed in 1988; (2) her admission she still thought [Petitioner] molested her
> at a time she knew he could not have molested her as they had not met (T
> 77-99); (3) variations in facts between her original reports and her
> deposition of April 2004; and (4) her blatant, last second, switch in story
> following the State's rest of case in chief and defense counsel's motion for
> directed verdict (at which time the court reopened the state's case
> allowing [A.W.R.] to retake the stand to testify (that penetration occurred)
> in direct contradiction of earlier testimony presented. (T 104-107).

*Id.* at 4d. Petitioner argues no rational trier of fact could have found him guilty based on

the evidence presented at the trial and, accordingly, he was denied his constitutional

right to a fair trial. *Id.*

As Respondent asserts, Petitioner did not present this claim in the Florida courts,

either in the pro se brief he filed in his direct appeal (after defense counsel filed an

Anders brief) or in his Rule 3.850 proceeding. *See* Doc. 12 Exs. H, J, K, L, and N. The

closest claim, to the one raised here, presented in those proceedings was Petitioner's

assertion in the second point of his pro se brief that the trial court abused its discretion

in denying his motion for a new trial. *See* Doc. 12 Ex. H at 32. There, Petitioner argued

in a conclusory final paragraph of a brief exceeding thirty pages:

> Finally, Appellant complains that a miscarriage of justice occurred upon conviction and the trial court's denial of Motion for New Trial.  This Appellant (still) adamantly maintains his innocence of the charge.  Moreover, the errors complained of violated his constitutional right to due process and a fair trial as guaranteed by the 5th and 14th Amendments of the United States Constitution; and Article I, Section 9 of the Florida Constitution.

*Id.*  This is the most significant reference Petitioner made in his brief to any federal authority.  *See id.*; *cf. id.* at 21 (section of brief on Point 1, concerning Petitioner's absence from jurisdiction and quoting Florida Supreme Court case which cited <u>Bundy v. State</u>, 471 So. 2d 9 (Fla. 1985), as citing <u>U.S. v. Borders</u>, 693 F.2d 1318, 1325 (11th Cir. 1982)).

Before bringing a habeas claim in federal court, a state prisoner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in post-conviction proceedings.  28 U.S.C. § 2254(b), (c); *see* <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995); <u>Picard v. Connor</u>, 404 U.S. 270, 277-78 (1971).  Fair presentation allows the state courts the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan</u>, 513 U.S. at 365 (quoting <u>Picard</u>, 404 U.S. at 275).  The exhaustion requirement is not satisfied if a petitioner fails to raise the federal claim in the state court.  *See, e.g.,* <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1303 (11th Cir. 1999) (explaining that claim that petitioner "simply never raised" in state court has

not been exhausted).  By not "fairly presenting" this claim in state court, Petitioner has failed to meet the exhaustion requirement for Ground 2 and any attempts to do so now appear precluded as procedurally barred.  *See, e.g.*, Harmon v. Barton, 894 F.2d 1268, 1270-71 (11th Cir. 1990) (explaining that, under Florida law, issues that were or could have been raised on direct appeal may not be reviewed in Rule 3.850 motion, and Rule 3.850 imposes procedural bar to successive motions for such relief when issue could have been raised in previous motion); Jackson v. State, 640 So. 2d 1173, 1174 (Fla. 2d DCA 1994) (explaining that claims of insufficiency of evidence cannot be raised under Rule 3.850).

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."  Coleman v. Thompson, 501 Us. 722, 732 (1991).  Such a petitioner, like Petitioner here, must "demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim."  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); *see* Coleman, 501 U.S. at 750.  The exception to this requirement "is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards, 529 U.S. at 451; *see* Coleman, 501 U.S. at 750.

Here, it appears Petitioner cannot demonstrate cause to excuse his procedural default.  He had an opportunity to raise this ground in his pro se appellate brief filed in his Anders appeal.  *See, e.g.,* Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir.

2003) (explaining petitioner had opportunity to raise issue in post-judgment motion or in appeal and, because petitioner presented nothing to suggest he was impeded from raising argument, court agreed with Respondents that no cause had been shown to excuse procedural default). Accordingly, this Court may decline to review the merits of his defaulted claim. *See, e.g.,* <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1265 (11th Cir. 2009) ("As Philmore has failed to show cause and prejudice to excuse his procedural default, we may not review the merits of his defaulted claim. *See* <u>Edwards</u>, 529 U.S. at 451 . . . . No exception to this rule applies here as Philmore does not assert that our failure to review his claim will result in a fundamental miscarriage of justice. *See id.* We therefore affirm the district court's denial of habeas relief on this issue.").

Petitioner appears to assert he will suffer prejudice if the Court does not consider his claim, at least as to the sufficiency of the evidence. *See* Doc. 21 at 3. Petitioner asserts in his reply that the victim, A.W.R., "has clarified in a letter addressed to the Petitioner that a critical element of the alleged crime did not occur" and Petitioner further asserts this "amounts, in Petitioner's opinion, to recantation of her court room testimony." *Id.* Petitioner referred to this letter from A.W.R. in his earlier motion, filed in this Court, seeking a stay so that he could exhaust his claim of newly discovered evidence. *See* Doc. 18. As this Court noted in the order denying that motion, Petitioner quotes from a portion of the letter in which A.W.R. states there was no penetration and she was confused; however, as Respondent asserted in opposition to the motion to stay, and as further explained in the analysis below, penetration is not required to prove capital sexual battery. Doc. 23.

Even assuming Petitioner could demonstrate cause, or assuming Petitioner has

satisfied the exception to that requirement and demonstrated sufficient probability that

the failure to review his federal claim will result in a fundamental miscarriage of justice,

this ground fails on the merits. Petitioner's second ground actually appears to assert

two claims: (1) denial of his constitutional right to a fair trial because the trial court

allowed the State to reopen its case to recall the victim to testify to penetration; and (2)

insufficiency of the evidence to support his conviction. Notably, in his reply filed in this

Court, Petitioner appears to have abandoned claim (1), focusing only on claim (2) and

asserting in response to the State's exhaustion argument that "the federal sufficiency of

evidence claim was, in fact, fairly presented in the state court," referencing his pro se

brief filed in the Anders appeal. Doc. 21 at 1.

In the information filed in the state court proceeding, the State of Florida charged

Petitioner with one count of capital sexual battery (sexual battery on a child under

twelve years of age):

> WILLIAM N. MEGGS, State Attorney for the Second Judicial Circuit of the
> State of Florida, charges that in Leon County, Florida, the above named
> defendant(s) [Dennis Ralph Baker], on or about an unknown date between
> the dates of May 21, 1984, and December 8, 1987, inclusive and
> continuing, did unlawfully commit a sexual battery upon [A.W.R.], a person
> less than twelve years of age, by union with victim's vagina with his penis
> and/or oral penetration of victim's vagina with his mouth, and the
> defendant was eighteen years of age or older, contrary to Section
> 794.011(2), Florida Statutes.

Doc. 12 Ex. A at 1 (emphasis added). The jury found Petitioner guilty of this count. *Id.*

at 40.

Regarding Petitioner's claim (2) under this ground challenging the sufficiency of

the evidence, as Respondent indicates, when a petitioner seeks federal habeas corpus relief on the ground that his conviction is based on insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); *see* Doc. 12 at 24. During the relevant time, section 794.011(2), Florida Statutes, provided:

> A person 18 years of age or older who commits sexual battery upon, or injures the sexual organs of, a person less than 12 years of age in an attempt to commit sexual battery upon such person commits a capital felony, punishable as provided in ss. 775.082 and 921.141.

The term "sexual battery" was defined as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose." § 794.011(1)(h), Fla. Stat. (Supp. 1984, 1985, 1987). Thus, to prove capital sexual battery, the State had to present evidence that (1) the victim, A.W.R., was less than twelve years old at the time of the offense; (2) Petitioner committed an act upon A.W.R. by which (a) his penis had union with A.W.R.'s vagina or (b) his mouth penetrated A.W.R's vagina; and (3) Petitioner was eighteen years of age or older at the time of the offense. *See* § 794.011(1)(h), (2), Fla. Stat.; Fla. Std. Jury Instr. (Crim.) 11.1; Doc. 12 Ex. D at 148 (jury instructions given at trial).

At the trial, held September 1, 2004, the victim and the Petitioner both testified and were the main witnesses. *See* Doc. 12 Ex. D. The victim, A.W.R., was born in May 1979, so she was 25 years old at the time of her trial testimony. *Id.* at 52. A.W.R.

testified that when she was six or seven years old, Petitioner asked her to place her mouth onto his penis; when A.W.R. was reluctant to do this, Petitioner had A.W.R. place her vagina onto his mouth. *Id.* at 59-62, 66, 72-73. A.W.R. testified that Petitioner was about 31 or 32 years old at that time. *Id.* at 62. A.W.R. testified that "he asked me to scoot up to where he would put my vagina on his mouth" and "[i]t tickled." *Id.* at 67; *see id.* at 72-73. This stopped because A.W.R.'s mother arrived. *Id.* at 67. On a different day, Petitioner rubbed A.W.R.'s vagina with his penis. *Id.* at 64. A.W.R. testified that she did not recall Petitioner ever penetrating her vagina with his penis. *Id.* at 64. A.W.R. testified that it was uncomfortable and it hurt sometimes when Petitioner rubbed his penis on her vagina. *Id.* at 64-65. A.W.R. testified that these acts occurred in Petitioner's bedroom. *Id.* at 65. A.W.R. testified that these acts occurred over "a long time" and more than once but less than ten times. *Id.* at 70-71. In December 1987, A.W.R. reported what Petitioner was doing to her; A.W.R. was eight and a half years old at that point. *Id.* at 81, 86.

After the State rested, defense counsel moved for a judgment of acquittal, arguing the State had presented evidence that Petitioner committed portion (a) of the crime as charged, but not sufficient evidence of (b), so that portion of the charge should not go to the jury. *Id.* at 104. After hearing argument, and over defense counsel's objection, the Court decided to allow the State to reopen its case to present additional testimony from the victim concerning (b):

> MR. HOLTON: Your Honor, at this time the defense would make a motion for a directed verdict as to the second allegation. The information sets out two means by which the crime was committed, [a] the first being union

with between the penis and the vagina, the penis of the defendant and vagina of the defendant [sic].  Secondly, [b] that the defendant committed an act upon the victim where his mouth penetrated the vagina of the victim.

I believe there's a total absence of any testimony about that [b].  I believe that there was testimony that she was asked to sit on his face, but I don't recall that there was any testimony concerning penetration.  Now, if it's anything other than the sexual organ of the accused, then there has to be proof of penetration, union with the mouth, the finger, is not a sexual battery.  So to the extent there is no testimony to support that, I would ask the Court to direct a verdict as to that portion of the allegation.

THE COURT: Ms. Ray?

MS. RAY: I think the testimony was that the defendant had her sit on his face, and she described how that felt, which was tickling, which she didn't exactly verbalize that that was done with his tongue, but you can infer that it was done with his mouth.  That's all I have to offer on that.  I did not ask her specifically if he penetrated her vagina with his tongue.  I can't say I asked her specifically that, and that she answered that.

THE COURT: That's my recollection is that there was not evidence – there was not testimony there was penetration.  There was testimony with regard to the tickling, but I don't think that is inconsistent with non penetration.  I think penetration is required.

MS. RAY: I would agree.

THE COURT: So you're agreeing to the defense motion in that regard?

MS. RAY: Unless the Court wants to let me reopen my case to put her back on to ask that specific question, I think I have to agree with Mr. Holton.  I did not ask her specifically about penetration.

THE COURT: Anything [in] objection to that request?

MR. HOLTON: Yes, there would be an objection.  It's not as if the charge is going away.  Obviously that's a matter within your discretion.  I think that the emotion that the victim has shown on the stand has affected the jury, and I would presume that the recall and getting into that level of detail is probably going to invoke the same type of emotion.

The State has rested.  They still have the charge as to the single allegation of union between the penis and the vagina, and I would suggest that it would be unduly prejudicial to the defendant, because we're not talking about the State losing the right to prosecute the charge.  I would object to the recall of the victim at this time.

THE COURT: I am going to allow the State to recall [A.W.R.].  Did you want to speak to her?

MS. RAY: I might as well confirm, and you can certainly come with me to confirm that with her.

THE COURT: All right.  Was there anything else, Mr. Holton?

MR. HOLTON: No, sir.

*Id.* at 104-06.  A.W.R. was then recalled and testified as follows:

DIRECT EXAMINATION

BY MS. RAY: I just have one further question for you, [A.W.R.].  You earlier in your testimony described an event where . . . the defendant had you sit on his face.  Do you recall that testimony?

A Yes.

Q At that time, did the defendant put his tongue or any part of his body in your vagina?

A Yes.

MS. RAY: Thank you.  I have nothing further.

THE COURT: Mr. Holton?

CROSS EXAMINATION

BY MR. HOLTON:

Q [A.W.R.], your testimony is that during that incident . . .[Petitioner] penetrated your vagina with some part of his mouth?

A With his tongue.

Q Is that a yes?

A Yes.

Q And again, do you recall your deposition being taken on April 2nd, 2004 in Norfolk, Virginia?

A Yes.

Q Do you recall the following question and answer, on page 66 starting on line 23: Did he penetrate your vagina with his mouth and tongue? Answer: Not that I remember.

A What?

Q Again my question to you was: Did he penetrate your vagina with his mouth and tongue? Your answer: Not that I remember.

A Yes, that was my answer, but then – that was my answer, but I forgot about that one time.

Q So back on April 2nd of this year you had forgotten that, but today you remember that?

A I believe I discussed that in that deposition of that time, of the first time. I wasn't sure if he did or not. I haven't reviewed it.

*Id.* at 107-08. Neither side had any additional questions for A.W.R. *Id.* at 108. The

defense case then proceeded and Petitioner testified that he did not do these acts. *Id.*

at 115-16, 118-19. Petitioner also testified as to his date of birth, October 23, 1947. *Id.*

at 134.

Viewing the evidence in the light most favorable to the prosecution, the jury

rationally could have determined beyond a reasonable doubt that Petitioner committed

the offense of capital sexual battery, as charged in the information, either by (a) union

with the victim's vagina with his penis or (b) oral penetration of victim's vagina with his

mouth.  As detailed above, the evidence presented as to (a) was sufficient to support

Petitioner's conviction for union with the victim's vagina with his penis, even before the

State presented the additional testimony of the victim on recall as to (b), that the

Petitioner's tongue penetrated her vagina.  Therefore, as to claim (2), contrary to

Petitioner's argument, a rational trier of fact could find beyond a reasonable doubt that

Petitioner committed capital sexual battery.

Further, as to Petitioner's claim (1) under this ground, that the trial court denied

him a fair trial in allowing the State to reopen its case to recall the victim to testify to

penetration, assuming Petitioner has not abandoned this claim, Petitioner has not

shown the trial court abused its discretion or otherwise erred.  *See* Pitts v. State, 185

So. 2d 164 (Fla. 1966) (finding record supported trial court "reopening the case for the

purpose of clearing up a point that had been confused in the original presentation" and

explaining that "[o]rdinarily the question of allowing the reopening of cases is one

involving sound judicial discretion of the trial court, a discretion rarely interfered with at

the appellate level"), *vacated in part on other grounds*, Pitts v. Wainwright, 408 U.S. 941

(1972) (concerning imposition of death penalty); Burk v. State, 497 So. 2d 731, 733

(Fla. 2d DCA 1986) (citing Pitts and explaining "[w]hether to allow the reopening of a

case is a question involving sound judicial discretion of the trial court" and explaining

further that "[i]n exercising its discretion to reopen a case for additional evidence, the

court should consider the timeliness of the motion, the character of the testimony, and

the effect of granting the motion"); Dees v. State, 357 So. 2d 491, 491 (Fla. 1st DCA

1978) (citing Pitts and finding no abuse of discretion where trial judge allowed State to

reopen its case "to present further evidence of venue" after defense had moved for judgment of acquittal "based on the ground that venue had not been proved"). *See also, e.g.*, U.S. v. Cohen, 676 F.2d 770, 775 (11th Cir. 1989) (explaining "[t]he decision to reopen a case to introduce evidence after the parties have rested is committed to the sound discretion of the [trial] court" and, with regard to such decision, the following are "considered as relevant: (1) whether the evidence cause surprise to the defendant; (2) whether the defendant was given an opportunity to meet the proof; and (3) whether the evidence was more detrimental to the defendant because of the order in which it was introduced"); U.S. v. Fla. W. Int'l Airways, Inc., 853 F. Supp. 2d 1209 (S.D. Fla. 2012) (citing Cohen and explaining decision to reopen case to introduce evidence after parties have rested is within trial court's discretion and further explaining that "[t]he Eleventh Circuit delineates certain factors to guide this inquiry, including 1) the timeliness of the motion to reopen, 2) the character of the testimony to be offered, 3) the effect of granting the motion to reopen, and 4) the reasonableness of the excuse of the request to reopen").

As indicated above, the evidence presented at Petitioner's trial was sufficient to support a conviction for capital sexual battery, as to (a), even before the State recalled the victim. In addition, after A.W.R. testified on recall as to (b), defense counsel had the opportunity to cross-examine her as to this additional testimony and did so, questioning her credibility because of her previous deposition testimony. A.W.R.'s answers to the few questions asked does not appear unexpected or surprising to the parties. The time between the State resting its case and the trial court allowing the State to reopen the

case appears relatively brief, as the defense had not yet presented its case.  In these circumstances, the trial court did not abuse its discretion in allowing the State to recall the victim to present additional testimony.

Finally, the Court has reviewed the letter dated October 25, 2009, purportedly from A.W.R. to Petitioner, that Petitioner attached to his earlier motion to stay.  Doc. 18.  In that hand-written letter, the writer states, "I don't believe that there was any penitration [sic] involved" and "I am willing to go back on the stand if need be."  *Id.* at 8.  In the letter, the writer further states:

> When they asked me if you penatrated [sic] my virginia [sic] I remember saying for them to repeat the question.  I remember saying for them to repeat the question.  I also remember saying it was so long ago I couldn't remember.  I can say since I believe there was no penitration [sic] and there was only rubbing and forplay [sic] that I believe sexual battery charge can be thrown out the courts.

*Id.* at 8-9.  No penetration was required for proof of (a), however, only union between Petitioner's penis and A.W.R.'s vagina.  *See* § 794.011(1)(h), (2), Fla. Stat.  At trial, as to (a), A.W.R. did not testify that penetration occurred, and the statements in this letter confirm there was "rubbing" as A.W.R. testified to at trial.  Therefore, even assuming the letter is from A.W.R., it does not amount to a recantation of her trial testimony, at least with regard to (a).  The evidence as to (a), as detailed above, was sufficient in and of itself to support Petitioner's capital sexual battery conviction.

Based on the foregoing, Petitioner has not shown entitlement to habeas relief on Ground 2.  Accordingly, this ground should be denied.

### Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief. The amended § 2254 petition (Doc. 6) should be denied on the merits.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner's

amended § 2254 petition on the merits (Doc. 6).  It is further **RECOMMENDED** that a

certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

      **IN CHAMBERS** at Tallahassee, Florida, on November 1, 2012.


             S/   Charles A. Stampelos          
             **CHARLES A. STAMPELOS**
             **UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO PARTIES**</u>

      **Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**